**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

|  |  |  |
|---|---|---|
| DATASCI, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-1611-MJG |
| | ) | |
| MEDIDATA SOLUTIONS INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEDIDATA SOLUTIONS, INC.'S MEMORANDUM IN OPPOSITION TO
DATASCI, LLC'S MOTION FOR LEAVE TO FILE A SECOND AMENDED
COMPLAINT OR, IN THE ALTERNATIVE, RELIEF FROM THE
<u>PROTECTIVE ORDER TO FILE A NEW COMPLAINT</u>**

I.      **INTRODUCTION**

As the Court recognized in its *Memorandum & Order Re: Amendment to Motion* dated March 25, 2010, DataSci's attempt to "supplement" its First Amended Complaint to include allegations and a claim of "fraud in the inducement" is exceptionally untimely and inappropriate. Contrary to what its motion suggests, DataSci has been in possession of virtually all of the supposedly "new" facts underlying the supplemental allegations in the "First Amended and Supplemented Complaint" it proffers since well before the end of 2009. In fact, the most recent "new" allegation in that First Amended and Supplemented Complaint arises out of a deposition that took place on February 4 – *more than two months ago*. If DataSci intended to further amend its already-amended complaint to include these new allegations in hopes of stating a claim for "fraud in the inducement," it should have done so as soon as it obtained the discovery giving rise to those allegations, and in any event well before the March 19 hearing on its original motion to amend. DataSci's failure to do so, coupled with its shifting positions on what is and is not included in the First Amended Complaint that the Court just accepted, has given rise to an egregious waste of the parties' and the Court's resources. Its pending motion for a second bite at the apple is a prejudicial abuse of process.

DataSci's alternative request – that the Court grant it relief from the operative protective order so that it may file a new "fraud in the inducement" lawsuit based on discovery obtained here – is equally misguided, as any new lawsuit would violate the well settled rule against claim-splitting. For those reasons and the others set forth below, the Court should reject DataSci's Motion for Leave to File a Second Amended Complaint or, In the Alternative, Relief from the Protective Order to File a New Complaint. As contemplated in the March 25 Order, the Court

should also require DataSci to compensate Medidata for the legal fees and costs it has incurred in connection with this groundless motion.

## II.     RELEVANT FACTS

This action has been pending since June 2009. After several extensions by consent, discovery closed on March 1, 2010. DataSci filed its original motion for leave to amend the complaint on December 17, 2009, two and one-half months before the discovery period closed. That motion was fully briefed by January 25, 2010. But DataSci inexplicably did not file its pending motion for leave to file a second amended complaint until April 2, 2010.

During the briefing on its original motion to amend, DataSci argued strenuously that it had stated a valid claim for "fraud in the inducement" even though, as Medidata pointed out, *the allegations on which DataSci was relying are not included in the First Amended Complaint*, but rather were set forth only in DataSci's reply memorandum of law on that motion.[1] The First Amended Complaint, by contrast, contains utterly conclusory statements that collectively fail to satisfy even the basic pleading requirements of Fed. R. Civ. P. 8, let alone the heightened standards applicable to fraud claims under Rule 9. (*See* Medidata's Surreply Br. on DataSci's Original Motion for Leave to Amend, dated January 25, 2010, at 8-11.) There were no allegations that stated a fraud claim for the simple reason that Medidata committed no such fraud. DataSci nevertheless insisted that its "claim for fraudulent inducement in connection with entering into the Agreement is pled with the requisite specificity and states a claim on which relief may be granted." (DataSci Reply Br. on Original Motion for Leave to Amend, dated January 19, 2010, at 7.)

---

[1] As Medidata previously noted, the determination whether a party has stated a valid claim turns on the allegations of the complaint in question; the party may not rely on statements, citations, exhibits, and arguments included as part of a legal brief on the issue. *See, e.g., Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748, n.4 (D. Md. 1997).

DataSci then changed positions completely. At the March 19, 2010 hearing on its motion for leave to amend, DataSci's counsel unequivocally acknowledged (several times) that the First Amended Complaint does *not* directly state a claim for "fraud in the inducement." (*See, e.g.,* Transcript of March 19 Hearing at 31:25 – 34:11 ("there are no direct allegations relating to inducing the original fraud [sic] in connection with entering into the licensing agreement.").) Accordingly, the Court made clear that it would decide the motion for leave to amend based only on the allegations and claims relating to DataSci's theory that Medidata "defrauded" it by allegedly failing to report and pay the full amount of royalties owed under the parties' June 2007 settlement and license agreement. On March 25, 2010, the Court granted DataSci's motion for leave to amend the complaint *nunc pro tunc*, and the First Amended Complaint became the operative complaint in the case.

DataSci has now changed course yet again. In the brief in support of its pending motion for leave to file a further amended complaint, DataSci asserts that it "believed that the 'fraud in the inducement' allegations *were* included in the original amended complaint." (Br. at 9 (emphasis added); *see also* Br. at 2 ("DataSci's first amended complaint contains certain allegations of fraud in the inducement."); Br. at 4.)

The Court should not countenance such gamesmanship. If DataSci was not satisfied with or wanted to add or expand on allegations in its First Amended Complaint for any reason, it had every opportunity – and more than enough time – to do so before the March 19 hearing. DataSci posits out of thin air that the Court would not "want additional briefing filed on the original motion prior to conducting the March 19 hearing[,]" (Br. at 10), but provides no meaningful explanation for why that is the case, let alone why it did not file a new motion to address the issue that it now raises (a month after the close of discovery). Indeed, almost two full months

3

elapsed between Medidata's surreply brief, in which Medidata identified the fundamental deficiencies in DataSci's supposed "fraud in the inducement" allegations, and the March 19 hearing. DataSci never sought during that time to correct those deficiencies, to file a Second Amended Complaint, or to do anything else to try properly to plead the groundless "fraud in the inducement" claim it hopes to salvage here.

Nothing prevented DataSci from acting sooner. Indeed, the new allegations in the proposed "First Amended and Supplemented Complaint" that DataSci proffers are almost entirely based on information of which DataSci has been in possession *since before the end of 2009*. And, none of the "new" information it proffers was received later than February 4, 2010 – that is, almost two months before its pending motion for leave to file another complaint. More specifically, the following are true of the 19 documents to which DataSci refers in its proposed "First Amended and Supplemented Complaint":[2]

- Medidata produced 13 of them on October 23, 2009;
- Medidata produced an additional 5 of them before the end of 2009;
- Medidata produced the last of them on January 26, 2010 – more than two months before DataSci's pending motion.

Likewise, DataSci's supplemental complaint relies on supposedly "new" facts revealed during depositions of 3 Medidata representatives, but the last of those depositions also occurred months ago, on February 4, 2010.

## III. ARGUMENT

The Court should reject DataSci's untimely effort to inject a "fraud in the inducement" claim that it failed adequately to plead as part of the amended complaint the Court just accepted.

---

[2] Not all of these references relate to DataSci's "fraud in the inducement" claim, but we include them all here for completeness.

A contrary result would justify and condone DataSci's dilatory mismanagement of its case and the inefficiency, unnecessary expense, and prejudice it has caused. The Court should also refuse to permit DataSci to avoid the consequences of its own delays and deficient pleadings by bringing a new lawsuit because such new suit would violate the settled prohibition against claim-splitting.

### A.     Applicable Legal Standards

Although leave to amend should be "freely" given "*when justice so requires*," *see* Fed. R. Civ. P. 15(a)(2) (emphasis added), that principle has well established limits. Courts regularly refuse motions to amend where the proposed amendment involves undue delay or dilatory motives on the part of the movant and would result in prejudice to the opposing party. *See, e.g., Deasy v. Hill*, 833 F.2d 38, 40-41 (4th Cir. 1987) ("[A] motion to amend <u>should be made as soon as the necessity for altering the pleading becomes apparent.</u> A party who delays in seeking an amendment is acting contrary to the spirit of the rule.") (emphasis added). Prejudice can take many forms, including that which results from belated claims that materially change the nature of the case and/or implicate the non-movant's prior discovery strategies. *Id.* at 41-42 (affirming district court's refusal to permit 3-month late amendment where original complaint did not state a claim that plaintiff had only hinted at because (i) "defendant could quite sensibly have decided not to commit her [discovery] resources to a shadowy claim that plaintiff may or may not have been serious about raising[;]" and (ii) [b]elated claims which change the character of litigation are not favored.").

It is equally well settled that a plaintiff who has been denied leave to amend a complaint (*e.g.*, on timeliness grounds) may not circumvent such denial by filing a new lawsuit asserting the allegations and claims that the first court refused to add. *See, e.g., Sensormatic Sec. Corp. v.*

5

*Seconsormatic Elecs. Corp.*, 273 Fed. Appx. 256, 265 (4th Cir. 2008) ("[T]he rule against claim splitting applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit.").[3]  This rule is firmly rooted in, and is part of, the doctrine of *res judicata*.  *Id.* (subsequent suit should be barred "if the claim involves the same parties and 'arises out of the same transaction or series of transactions as the first claim.'") (citation omitted).

### B. DataSci's Second Motion for Leave to Amend is Impermissibly Belated and Prejudicial

As shown above, DataSci could and should have sought to plead, or "expand upon," or otherwise address its so-called "fraud in the inducement" claim long before now.  The "supplemented" amended complaint it proffers with its pending second motion to amend cites a number of Medidata documents and deposition excerpts to try to bolster that tenuous claim, but none of those documents or excerpts came into its possession later that February 4, 2010.  Indeed, 18 of the 19 documents DataSci cites were in its possession *before the end of 2009*.  DataSci's puzzling failure to act before now simply cannot be squared with the Fourth Circuit's mandate that motions to amend "should be made as soon as the necessity for altering the pleading becomes apparent." *Deasy*, 833 F.2d at 41.  In these circumstances, as in *Deasy*, the delay was significant and unwarranted and provides ample cause to deny DataSci's motion to amend.

---

[3] *See also McReady v. O'Malley,* RWT 08cv2347, 2010 WL 917821 (D. Md. March 8, 2010) (dismissing plaintiff's second lawsuit where the claims arose out of the same facts giving rise to the original lawsuit and it was obvious plaintiff was "attempting to circumvent the Court's Order denying him leave to file amended complaints"); *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000) (when one suit is pending, a plaintiff cannot bring a separate action "on the same subject, in the same court, against the same defendant at the same time"); *Landscape Props. v. Whisenhunt*, 127 F.3d 678, 683 (8th Cir. 1997); *Huck v. Dawson*, 106 F.3d 45, 49-50 (3d Cir. 1997).

### C. Medidata Is Not Responsible for DataSci's Delay

DataSci advances no meaningful explanation for why it waited so long to seek to bolster the allegations on which it relies for its hypothetical "fraud in the inducement" claim. Instead, it levies a range of vague, conclusory, and meritless accusations at Medidata concerning supposed discovery deficiencies to try to justify its current motion. (*See generally* Br. at 11 ("Medidata's conduct in discovery is largely what caused DataSci to have to further amend its complaint.")) We doubt the Court would welcome the comprehensive rebuttal of all of the misrepresentations and half-truths that DataSci spins out, and we have not included it here. But even a cursory review of DataSci's accusations reveals that they are utterly hollow and, in any event, do not demonstrate that Medidata is to blame for DataSci's untimely motion to amend.

The following are but a few examples:

- "Medidata continued to produce documents that supported DataSci's fraud claim **after** DataSci filed its [original] motion [to amend]. These included documents that DataSci had been demanding for months in discovery. In fact, Medidata selectively timed its productions of documents, often leaving DataSci little or no time to review newly produced material prior to depositions." (Br. at 4.) (emphasis in original).

DataSci does not explain why the fact that discovery remained ongoing and Medidata was producing the documents DataSci demanded (which are largely irrelevant in any event) is remarkable or justifies its belated effort to re-amend its complaint. It offers absolutely no support (and none exists) for the contention that Medidata "timed" the production of particular documents to impede DataSci's discovery efforts. Most importantly, DataSci connects none of this to its flailing efforts concerning "fraud in the inducement." This is mud-slinging, pure and simple.

- "Furthermore, highly-relevant deposition testimony was obtained after briefing of DataSci's [original] motion to amend that further supports DataSci's fraud allegations. For example, DataSci deposed Vikram Shah, Vice-President of

7

>Services at Medidata, on February 4, 2010." (Br. at 5-6.)

If DataSci believed that Mr. Shah's deposition testimony provided the gist for a "fraud in the inducement" claim, the obvious question is why, *immediately following that deposition*, DataSci did not seek to "supplement" the First Amended Complaint it later admitted was deficient. DataSci does not try to answer that question because there is no good answer.

- "[E]ven after the parties agreed to appoint a special master, Medidata's counsel continues its attempts to limit DataSci to only the documents Medidata wants DataSci to see." (Br. at 6.)

This is statement is totally false. Medidata has advised DataSci and Special Master Reiziss that, during the document inspection schedule to occur on April 27, 2010, DataSci will have access to all of Medidata's so-called "Software Development Life-Cycle Documents" – that is, the precise set of (again, mostly irrelevant) documents that DataSci contends it needs to see.

- "DataSci expects that th[e] document and product inspection will produce additional evidence to support Medidata's fraud claim. However, the unnecessary legal expenses DataSci has incurred throughout the entire discovery period to obtain the documents and inspection it was properly owed due to Medidata's conduct is significant." (Br. at 7.)

Again, DataSci hurls conclusory generalizations but provides no hard facts showing that Medidata's conduct has caused "unnecessary legal expenses." In reality, any such unnecessary expense is the result of the unfocused and absurdly overbroad discovery plan DataSci has implemented from the start, all of which is well documented in the discovery motions the parties have briefed. More importantly, DataSci fails to show how any "additional evidence" it hopes to obtain, or how any alleged discovery misconduct, has any bearing at all on whether its motion to file a new complaint is timely and proper.

### D. Medidata Would Be Prejudiced if the Court Permits Another Amendment at this Late Stage in the Case

Excusing DataSci's excessive delay would prejudice Medidata in the several related ways the Fourth Circuit identified in its decision in *Deasy v. Hill*. As in that case, the claim belatedly sought to be added (here, "fraud in the inducement") would substantially alter the nature of this action and the character of the evidence to be adduced. *See* 833 F.2d at 41-42. Such a claim involves entirely new issues, such as (i) whether Medidata owed DataSci a legally cognizable duty in connection with the parties' contract negotiations, (ii) whether DataSci "reasonably relied" on specific representations or omissions during those negotiations, and (iii) whether Medidata "intended" to deceive DataSci. None of that has been in play thus far, even after the Court permitted DataSci to include in the case (via the First Amended Complaint) the separate and different "fraudulent royalty reports" theory.

The new facets of the case that would arise if "fraud in the inducement" were introduced at this late stage would further prejudice Medidata because, "quite sensibly," it did not direct its discovery strategy and resources toward them. *Id.* at 41. To be absolutely clear, <u>discovery is and should remain closed</u> – indeed, DataSci's "scorched earth" approach has already required far more time, effort, and expense that should have been necessary – but Medidata will be prejudiced if the Court grants this motion in any event. Medidata should not be forced to endure more of DataSci's boundless discovery requests because DataSci wants to try again to state a claim for fraudulent inducement. Nor should Medidata be forced to litigate DataSci's threadbare allegations on that claim without discovery designed to address them. It is DataSci, not Medidata, that should suffer the consequences of, and bear any disadvantage caused by, this misguided and belated motion to amend.

DataSci suggests that Medidata "cannot claim prejudice or surprise" because "*through

*briefing* of the first motion to amend . . . [it] provided notice to the Court and Medidata that the first amended complaint contained allegations of fraud in the inducement and that additional facts . . . were still being obtained in discovery." (Br. at 4.) (emphasis added). That position is wrong as a matter of fact and as a matter of law. Indeed, DataSci repeatedly acknowledged in open court that the First Amended Complaint does *not* state a claim for "fraud in the inducement." Its back-peddling here is remarkable. And, as the Fourth Circuit noted in *Deasy*, a defendant need not guess whether a defendant is serious about pursuing a claim that has been referenced in court papers and discovery but not stated under the pleading rules. *See* 833 F.2d at 41 ("A complaint is meant to state the issues of a case so that the parties can conduct discovery and present their cases intelligently."); *see also Zachair, Ltd.*, 965 F. Supp. at 748, n.4.

### E.   DataSci's Contemplated "New Lawsuit" Would Violate the Rule Against Claim-Splitting

The Court should also refuse DataSci's alternate request for relief from the operative protective order – *i.e.,* to facilitate its filing a new lawsuit to allege the untimely "fraud in the inducement" claim it wants to add here. Any such new lawsuit would violate the well settled *res judicata* prohibition against claim-splitting because, as the Fourth Circuit held in *Sensormatic Sec. Corp.*, it would arise out of the same transaction or series of transactions as the first claim. *See* 273 Fed. Appx. at 265. A contrary result would be an invitation for DataSci to try to evade an adverse decision on its second motion to amend through further wasteful litigation – precisely the problem the claim-splitting rule prevents.

### F.   The Court Should Require DataSci to Compensate Medidata for the Attorneys' Fees and Costs Incurred in Connection with this Motion

Finally, DataSci has not shown cause why it should not be required to reimburse Medidata for the fees and costs unnecessarily incurred in connection with this motion. The

Court should therefore impose that sanction, as is clearly contemplated in its March 25 *Memorandum & Order Re: Amendment to Motion*. Such a sanction would have been fully justified under Fed. R. Civ. P. 11 even if the Court had not so clearly indicated that DataSci's belated effort to re-amend the complaint was "most inappropriate." The sanction is unquestionably appropriate now, after the Court admonished DataSci and required it to "show cause" why such sanction should not issue if it persisted in pressing the amendment, and given that DataSci has not even come close to demonstrating the requisite cause.

Dated: April 19, 2010                                               Respectfully submitted,

 /s/ Janine A. Carlan
Savalle C. Sims (Bar No. 15186)
Janine A. Carlan (Bar No. 29066)
Ross Q. Panko (Bar No. 29079)
ARENT FOX LLP
1050 Connecticut Avenue NW
Washington, DC 20036-5339
sims.savalle@arentfox.com
carlan.janine@arentfox.com
panko.ross@arentfox.com
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

Attorneys for Defendant/Counter-Plaintiff
Medidata Solutions, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April 2010, I caused a copy of the foregoing Medidata Solutions, Inc.'s Memorandum in Opposition to DataSci, LLC's Motion for Leave to File a Second Amended Complaint Or, In the Alternative, Relief From the Protective Order To File a New Complaint to be served electronically and by email to all counsel of record as follows:

>Gerard P. Martin, Esquire
>Rosenberg Martin Greenberg, LLP
>25 South Charles Street, Suite 2115
>Baltimore, MD 21201
>gmartin@rosenbergmartin.com
>
>Richard J. Oparil, Esquire
>Patton Boggs LLP
>2550 M Street, NW
>Washington, DC 20037
>ROparil@PattonBoggs.com
>
>Kevin M. Bell, Esquire
>Patton Boggs LLP
>8484 Westpark Drive
>McLean, VA 22102
>Kbell@pattonboggs.com

/s/Janine A. Carlan_____
Janine A. Carlan