```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

DATASCI, LLC                    *

        Plaintiff               *

    vs.                         *  CIVIL ACTION NO. MJG-09-1611

MEDIDATA SOLUTIONS, INC.        *

        Defendant               *

*       *       *       *       *       *       *       *       *
```

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Medidata Solutions, Inc.'s Motion for Partial Summary Judgment [Document 169] and DataSci, LLC's Cross Motion for Partial Summary Judgment [Document 179] and the materials submitted relating thereto.  The Court has held a hearing and has had the benefit of the arguments of counsel.

I.   BACKGROUND

Defendant, Medidata Solutions, Inc. ("Medidata") is a provider of electronic data collection ("EDC") software solutions and services to companies conducting clinical trials. Plaintiff, DataSci, LLC, ("DataSci") owns U.S. Patent No. 6,496,827 ("the '827 Patent"), which relates to a method for the collection and validation of clinical trial study data that includes a remote verification[1] feature.

---

[1] I.e., a feature whereby data input is verified at a remote site computer before the data is transmitted to the "central" database.

In and about 2007, Medidata offered[2] a centrally-hosted "on-line" EDC known as Rave®[3] and an EDC known as "Rave Remote™" that included a remote verification feature.  At that time, DataSci notified Medidata that it was considering asserting against Medidata claims of infringement of the '827 Patent.  The parties resolved the matter by entering into a License and Settlement Agreement ("the Agreement") in June 2007.

Pursuant to the Agreement, Medidata paid a $2,200,000 up-front license fee to settle claims for past infringement by Rave Remote™.  In the Agreement, DataSci granted Medidata a royalty-bearing license to the '827 Patent for any Medidata system that satisfied the definition of a "Licensed Data Collection System" ("LDCS").  An LDCS is defined in the Agreement as including:

> "Medidata's Rave Remote™ electronic data collection system and services, and/or comparable systems and services in which clinical trial data may be input into an electronic case report form at a remote site computer and a first level of data verification may be performed via the remote site computer as described and claimed in the Licensed Patent."

Agreement, 1.06.

The Agreement grants a non-exclusive license to Medidata to make, use, sell, import, market, distribute, oversee the operation and training of, and service the LDCSs and to

---

[2] Presumably among other things.
[3] DataSci does not necessarily agree that the 2007 version of Rave® excluded a remote verification feature.

sublicense the LDCSs to its customers.  Under the Agreement, Medidata acknowledged the '827 Patent to be valid and agreed not to challenge the validity, enforceability, or infringement of the patent by its LDCSs. Medidata also agreed to mark its licensed products, to report on its LDCS sales, and to remit royalties.

The Agreement includes a covenant against suit clause stating:

> DataSci will not assert U.S. Patent No 6,496,827, or any patents related to the '827 patent, including any patents that claim priority from the '827 patent and any foreign equivalents of such patents, against Medidata in connection with Medidata's use and sale of its Rave® electronic data collection system.

Agreement, 5.02(e).

As discussed herein, Medidata contends that it is entitled to partial summary judgment establishing that:

1. By virtue of the Agreement, Rave® is not an LDCS subject to any royalty obligation.

2. DataSci breached the Agreement:

    a. By bringing the instant lawsuit against Medidata.

    b. By filing a patent infringement suit against one of Medidata's customers.

3

DataSci contends that it is entitled to summary judgment establishing that:

1. By virtue of the Agreement, Rave® may be held to be an LDCS subject to a royalty obligation.

2. DataSci did not breach the Agreement:

    a. By bringing the instant lawsuit against Medidata.

    b. By filing a patent infringement suit against one of Medidata's customers.

II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v.

4

Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her."  Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

Cross motions for summary judgment "do not automatically empower the court to dispense with the determination whether questions of material fact exist." Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987). The court may grant summary judgment in favor of one party, deny both motions, or grant in part and deny in part each of the parties' motions. See Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

III. <u>DISCUSSION</u>

    A.   <u>Can Rave® Be an LDCS?</u>

The Agreement provides for the payment of royalties with respect to an LDCS, defined as including "Medidata's Rave Remote™ electronic data collection system and services, and/or comparable systems and services [that have a remote verification feature.]" Agreement, 1.06. The Agreement also provides that "DataSci will not assert [the '827 Patent] . . . against Medidata in connection with Medidata's use and sale of its Rave® electronic data collection system." Agreement, 5.02(e).

Medidata contends that the pre-Agreement version of Rave® did not have a remote verification feature and that it has not sold any post-Agreement version of Rave® that has such a feature. DataSci most definitely contends that Medidata has sold post-Agreement versions of Rave® that have a remote verification feature. DataSci seems to be contending, in the alternative, that the pre-Agreement version of Rave® had a remote verification feature or that a remote verification feature was added after the Agreement.

The Court must assume – for the instant summary judgment purposes – that Medidata has made post-Agreement sales of a version of Rave® that included a remote verification feature. Upon this assumption, the post-Agreement versions would meet the literal definition of an LDCS subject to royalties under clause

1.06 of the Agreement.  However, Medidata contends that the only reasonable interpretation of the Agreement would determine that the covenant against suit provision in clause 5.02(e) effectively excludes any version of Rave® from being an LDCS subject to a royalty obligation. Therefore, even if, post-Agreement, Medidata changed its Rave® product by adding a remote verification feature, the modified version would not be subject to royalties.

DataSci asserts that the only reasonable interpretation of the Agreement is one that would not "immunize" a version of Rave® that includes a remote verification feature, and particularly a version in which the feature had been added post Agreement.

Medidata contends, among other things, that Rave®, as a trademarked product name, is distinguished from Rave Remote™ in the Agreement, being specifically identified in section 5.02(e) as the product against which DataSci will not assert its patent. Moreover, Rave Remote™ is specifically referred to as the product for which the up-front license fee was paid to settle past infringement claims.  Medidata also points to the removal of the language "current version of RAVE" during negotiations of the Agreement.

It may be possible, on the evidence now of record, for a reasonable jury to conclude that the agreement can be

interpreted as Medidata contends.  However, that is not the only possible reasonable conclusion.  Indeed, a jury might well find more persuasive DataSci's position that the Agreement cannot reasonably be read to provide a license to produce Rave Remote in return for royalty payments but also to allow Medidata to produce the equivalent of Rave Remote [a modified Rave® product] royalty-free.

There also appears to be an issue as to whether the version (or one of the versions) of Rave® being produced when DataSci signed the Agreement had a remote verification feature.  If it did, and if DataSci was aware (or should have been aware) of this, there would be persuasive evidence that the Agreement should be construed to exclude from the category of LDCS a version of Rave® that had a remote verification feature.  On the other hand, if there were versions of Rave® having a remote verification feature, but DataSci was misled into believing that there was none, there could be persuasive evidence tending to support DataSci's position.

In sum, the Court finds that there are genuine issues of material fact in regard to the "LDCS definition versus covenant against suit conflict."  Therefore, neither side is entitled to summary judgment with regard to the question of whether a Rave® product with a remote verification feature would be an LDCS subject to royalties.

B.  The Quintiles Case

Medidata alleges that DataSci breached the covenant against suit clause of the Agreement by suing purchasers of Rave® - Quintiles Transnational Corp. and Quintiles, Inc. (collectively "Quintiles") - for infringement of the '827 Patent. DataSci, LLC v. Quintiles Transnational Corp., No. 8:08-cv-01679-MJG (D. Md. filed June 26, 2008).  The Quintiles case settled before discovery was completed, and Medidata partially indemnified Quintiles for its legal fees in defending the suit.

The parties disagree as to the extent to which, if at all, DataSci was suing on the theory that the version of Rave® purchased by Quintiles "directly" infringed the '827 Patent[4] as distinct from the theory that Quintiles added a remote verification feature to a non-infringing version of Rave®. Furthermore, DataSci contends that any "direct" infringement claims would have included claims pertaining to pre-Agreement sales that would not be covered by the Agreement.

To the extent that DataSci sued Quintiles on the theory that the version of Rave® itself "directly" infringed the '827 Patent, the issue presents, again, the question of whether a

---

[4] "DataSci asserts infringement against the following accused products that are made, used, sold, offered for sale and/or imported by the defendants: Oracle Clinical Remote Data Capture (RDC) 4.5.3 Onsite, GoCRF, Medidata Rave, Invivodata DiaryPro and unnamed internal and third-party electronic data capture products and services." Quintiles, Plaintiff's Initial Disclosure of Asserted Claims, ECF No. 41-1.

version of Rave® sold by Medidata that includes a remote verification feature can be an LDCS as discussed above.

To the extent that DataSci sued Quintiles on the theory that Quintiles added a remote verification feature to a non-infringing version of Rave® sold by Medidata, it would appear that the Agreement would not be violated.  After all, even if there is "immunity" for a Rave® product that includes a remote verification feature, it is hardly reasonable to contend that an independent infringing act by a downstream purchaser's adding a remote verification feature would be immunized.

Moreover, it is readily apparent that there are ample factual issues – including, but not limited to, allocation questions – pertinent to the Quintiles case claim.

The Court finds that neither side is entitled to summary judgment with regard to the breach of Agreement claim based upon the Quintiles law suit.

### C.  The Instant Suit

The Agreement includes a covenant against suit clause providing, in pertinent part, that "DataSci will not assert [the '827 Patent] . . . against Medidata in connection with Medidata's use and sale of its Rave® electronic data collection system."

Medidata contends that the instant lawsuit constitutes an "assertion" of the '827 Patent that violates the covenant against suit clause. Datasci counters that the instant lawsuit is a breach of contract action and not an "assertion" of the '827 Patent.

The Court finds ambiguous on the current record[5] the question of whether filing suit to enforce the royalty obligation under the Agreement constitutes an "assertion" of the '827 Patent. Even if the instant lawsuit constitutes an "assertion" of the patent, the application of the covenant against suit clause turns upon whether the term "Rave® electronic data collection system" is interpreted to include a Rave® version that has a remote verification feature. This is the same issue, discussed above, with regard to the question of whether a version of Rave® with a remote verification feature can be an LDCS under the Agreement. As discussed above, neither side is entitled to summary judgment in regard to the issue.

---

[5] The Court does not foreclose the possibility that, in light of the evidence and contentions at trial, DataSci would be entitled to Judgment as a Matter of Law on the issue in the absence of any claim for "patent damages" as distinct from breach of contract damages.

11

IV.  CONCLUSION

For the foregoing reasons:

1.  Medidata's Motion for Partial Summary Judgment [Document 169] is DENIED.

2.  DataSci's Motion for Partial Summary Judgment [Document 179] is DENIED.

SO ORDERED, on Wednesday, February 2, 2011.

/s/
Marvin J. Garbis
United States District Judge